UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00344-TBR

PENELOPE HUDSON,                                                                    PLAINTIFF

v.

PARK COMMUNITY CREDIT UNION, INC.,                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Park Community Credit Union, Inc.'s motion to dismiss or, in the alternative, for a more definite statement. [DN 5.] Plaintiff Penelope Hudson responded, [DN 6], and Defendant replied, [DN 7.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

BACKGROUND

Plaintiff Penelope Hudson worked at Park Community Credit Union, Inc. ("Park Community") for just over fifteen years, from May 21, 2001 until her termination on September 29, 2016. [DN 1-1 (State Court Complaint).] In May of 2017, Hudson brought suit against Park Community in Kentucky state court alleging that, throughout her employment, she "was continually subject to harassment, disparate treatment and a hostile work environment due to her status as a gay woman." [*Id.* at 3.] Hudson makes several allegations in her complaint, which the Court must accept as true, including that she was "told to change her appearance as she was 'too butch' to deal with customers," "[t]hat her perceived sexual orientation was discussed with other employees and customers overheard those conversations," "[t]hat she was repeatedly passed over for promotions due to her supervisor's animus toward lesbians," that "another supervisor . . . made a comment more than one time that the Plaintiff doesn't believe in God since she is gay."

1

[*Id.* at 3–5.] On the basis of these and additional allegations, Hudson claims violations of Louisville-Metro Government Ordinance § 92.06, the Kentucky Civil Rights Act (KCRA), KRS § 344 *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* [*Id.* at 7–10.] Park Community removed this suit to federal court on June 6, 2017, [DN 1 (Notice of Removal)], and thereafter filed the instant motion to dismiss or, in the alternative, for a more definite statement. [DN 5.] For the reasons discussed more fully below, the Court will grant in part and deny in part Park Community's motion.

STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion

to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

DISCUSSION

In its motion to dismiss or, in the alternative, for a more definite statement, Park Community alleges that Hudson's claims must fail for three main reasons. First, because Louisville Metro Government Ordinance § 92.06 does not allow for a private right of action. [DN 5-1 at 2 (Memorandum in Support of Motion to Dismiss).] Second, because none of the causes of action Hudson asserts allow relief for discrimination on the basis of sexual orientation. [*Id.*] And third, because to the extent Hudson's claims are based on a sex stereotyping theory, Hudson has failed to plead sufficient facts to state a claim. [*Id.*] The Court will address each of these arguments, and Hudson's responses thereto, in turn.

**1) Louisville-Metro Government Ordinance § 92.06**

Section 92.06 of the Louisville-Metro Government Code of Ordinances reads as follows:

> § 92.06  UNLAWFUL PRACTICES IN CONNECTION WITH EMPLOYMENT
>
> (A)  It is a prohibited, unlawful practice for an employer:
>
>   (1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, age 40 and over, disability, sex, gender identity, or sexual orientation.

Louisville-Metro Government Code of Ordinances § 92.06(A)(1). Section 92.08 of the Ordinances goes on to state that "[t]he administration and enforcement of this chapter shall be the responsibility of the Louisville/Jefferson County Human Relations Commission - Enforcement, and it shall have full operating responsibility for carrying out the provisions of this

chapter." Louisville-Metro Government Code of Ordinances § 92.08(A). Among the Human Relations Commission's powers include "[i]nstitut[ing] proceedings in Jefferson Circuit Court for enforcement of the orders of the Human Relations Commission - Enforcement or its Executive Director, including appeal." *Id.* § 92.08(B)(11).

Section 92.09 outlines the complaint procedure for individuals who allege that their employer has violated § 92.06. Under that section,

> [a]ny person or persons claiming to be aggrieved by an unlawful practice that is prohibited by this chapter may file a written complaint in accordance with the rules and regulations of the Human Relations Commission - Enforcement. The complaint must be filed within 180 days after the alleged unlawful practice occurred . . . Any person or persons claiming to be aggrieved by an act in violation of this chapter may file an action in Jefferson Circuit Court and obtain civil remedies as provided in KRS Chapter 344 and Title VIII of the Federal Civil Rights Act of 1968 as amended and any other federal civil rights statute that grants state courts concurrent jurisdiction.

Louisville-Metro Government Code of Ordinances § 92.09(A). That section further states that

> [i]f reasonable cause concerning allegations of an unlawful practice in connection with housing is found, the complainant and respondent shall be advised in writing that either party may elect to have their claims asserted in the complaint decided in a civil action. Notice of this election must be made to the Human Relations Commission - Enforcement and all other parties not later than the 20th day after receipt of the right of election. Upon receipt of such notice, the Human Relations Commission - Enforcement shall authorize, within 30 days thereafter, filing and maintaining an action on behalf of the complainant in Jefferson Circuit Court which may award all relief available under this chapter.

*Id.* § 92.09(E)(3).

However, nowhere in Chapter 92 of the Ordinances exists a private right of action for an individual to bring suit, absent notification by the Human Relations Commission "that either party may elect to have their claims asserted in the complaint decided in a civil action" after "reasonable cause" is found by the Commission. Indeed, Courts in this District have determined that § 92.06 does not create a private right of action. *See Mickens v. Gen. Elec. Co.*, No. 3:16CV-

00603-JHM, 2016 WL 7015665, at *2 (W.D. Ky. Nov. 29, 2016) (McKinley, J.) ("Ordinance § 92.06 does not create a private right of action.") (citing *Roberson v. Brightpoint Servs., LLC,* No. 3:07-CV-501, 2008 WL 793636, at *2–3 (W.D. Ky. Mar. 24, 2008) (Simpson, J.) ("Although the General Assembly granted municipalities the authority to expand the coverage of the KCRA by prohibiting additional forms of discrimination by local ordinance, it did not allow municipalities to create private rights of action for persons injured by violations of such ordinances. Because Metro Government exceeded the power granted to it by the General Assembly by creating such a private right of action for persons injured by a violation of the Ordinance, Roberson cannot obtain a remedy from this court."). *See also Price v. TJX Companies, Inc.*, No. 5:11-CV-319-JMH, 2012 WL 1565235, at *2 (E.D. Ky. May 2, 2012) ("[W]hile Lexington–Fayette Urban Government Ordinance 201–99 does prohibit [sexual orientation] discrimination, it does not create a private right of action in a court of law for violations of the Ordinance.").

In her response, Hudson asserts that the situation in *Mickens* "is not the same situation as in this case, as [Hudson] will be filing a complaint with the EEOC before her time runs out, which is something the Plaintiff in *Mickens* chose not to do." [DN 6 at 2.] Further, Hudson states that "the Sixth Circuit is one of the only Circuits in the Country that requires this step and counsel is planning on litigating that issue at some point, as she has numerous other cases she is working on at this time where that issue will be raised." [*Id.*] However, neither of these arguments change the fact that Ordinance § 92.06 does not create a private right of action. As an initial matter, the court in *Mickens* did not hinge its holding on the fact that the plaintiff had not filed an EEOC complaint; rather, it merely stated, relying on *Roberson*, that "Ordinance § 92.06 does not create a private right of action." *Mickens*, 2016 WL 7015665, at *2. Moreover, Hudson fails to explain to the Court how filing an EEOC complaint would change that fact in any way.

5

Accordingly, even accepting all of Hudson's allegations as true, she cannot state a claim for relief under Ordinance § 92.06 absent "receipt of the right of election" from the Kentucky Human Relations Commission – Enforcement. Therefore, her claims under § 92.06 must be dismissed for failure to state a claim upon which relief can be granted.

**2) Discrimination on the Basis of Sexual Orientation under the KCRA and Title VII**

Hudson also alleges violations of both the KCRA and Title VII of the Civil Rights Act of 1964. "Because the KCRA mirrors Title VII, we use the federal standards for evaluating sex-discrimination claims." *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 497 (6th Cir. 2016) (citing *Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir. 2000)). Park Community asserts that these claims must be dismissed because sexual orientation discrimination is not prohibited under either the KCRA or Title VII.

True, the Sixth Circuit has made clear that "[u]nder Title VII, 'sexual orientation is not a prohibited basis for discriminatory acts,'" and therefore that "[a] claim premised on sexual-orientation discrimination thus does not state a claim upon which relief may be granted." *Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516, 519 (6th Cir. 2011) (citing *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 762 (6th Cir. 2006)). In her response, however, Hudson contends that she "has not argued that KCRA and Title VII claims are related to her being gay, but to gender-stereotyping." [DN 6 at 3.] This does not appear to be entirely accurate, however. Count II of Hudson's complaint alleges that Park Community violated the KCRA "by subjecting the Plaintiff to discrimination and depriving employment based on sexual orientation and her perceived divergence from sexual stereotyping." [*Id.* at 8.] Likewise, in Count III, Hudson alleges that Park Community violated Title VII by "[s]ubjecting the Plaintiff to discrimination and depriving employment solely due to her sexual orientation and her perceived divergence from sexual

stereotyping." [*Id.* at 9.] Additionally, several of the factual allegations Hudson makes in her complaint relate solely to her sexual orientation. For instance, Hudson's allegations that "she was repeatedly passed over for promotions due to her supervisor's animus towards lesbians," that multiple employees and supervisors discussed her sexual orientation, and that she has known of only one openly LGBT employee at Park Community in her fifteen years of employment relate directly to her sexual orientation. [DN 1-1 at 4–6.] Thus, while Hudson does allege sex stereotyping in her complaint, she equally alleges sexual orientation discrimination. Accordingly, to the extent her KCRA and Title VII claims are based on allegations of sexual orientation discrimination, those claims are dismissed for failure to state a claim upon which relief can be granted.

**3) Discrimination on the Basis of Gender Stereotyping under *Price Waterhouse v. Hopkins***

However, to the extent Hudson *does* plead gender stereotyping discrimination, this type of claim is cognizable under both the KCRA and Title VII. In *Price Warehouse v. Hopkins*, the Supreme Court held that claims of sex discrimination include instances in which employers "evaluate employees by assuming or insisting that they matched the stereotype associated with their group." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). For instance, "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250. In *Price Waterhouse*, the Court found that evidence of sex stereotyping existed where the plaintiff was denied partnership based on numerous comments relating to her mannerisms and appearance, such as a comment that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.*

Applying *Price Waterhouse*, the Sixth Circuit has explained "that making employment decisions based on sex stereotyping, i.e., the degree to which an individual conforms to traditional notions of what is appropriate for one's gender, is actionable discrimination under Title VII." *Vickers*, 453 F.3d at 762. That being said, the Sixth Circuit has also cautioned district courts against allowing Title VII plaintiffs to "'bootstrap protection for sexual orientation into Title VII' under the guise of a sex-stereotyping claim." *Gilbert*, 432 F. App'x at 520 (quoting *Vickers*, 453 F.3d at 764). Specifically, the Sixth Circuit has explained that a claim for gender stereotyping must consist of an "argument that [the plaintiff's] appearance or mannerisms on the job were perceived as gender non-conforming in some way and provided the basis for the harassment [she] experienced." *Vickers*, 453 F.3d at 763. By contrast, if "the harassment of which [the plaintiff] complains is more properly viewed as harassment based on [the plaintiff's] perceived homosexuality, rather than based on gender non-conformity," that claim is not legally cognizable. *Id.; see also Gilbert*, 432 F. App'x at 520 ("Gilbert's allegations involve discrimination based on sexual orientation, nothing more. He does not make a single allegation that anyone discriminated against him based on his 'appearance or mannerisms' or for his 'gender non-conformity.'").

Applying these precepts to the instant case, Hudson's allegations of sex discrimination under the KCRA and Title VII can only state a legally cognizable claim if she pleads sufficient facts to suggest that she experienced harassment or an adverse employment action on the specific basis of alleged gender non-conformity, meaning her appearance or mannerisms. Here, Hudson's allegation that she was asked to change her appearance because "she was 'too butch' to deal with customers" certainly qualifies as the type of gender-nonconforming allegation recognized in *Price Waterhouse*. [DN 1-1 at 3.] Hudson further alleged that she had overheard "her appearance

and attire being discussed by her supervisors, which is why she believed that she had to change her appearance to keep her job and be promoted in her career." [*Id.*] These allegations, though scant, satisfy the requirement that Hudson allege that she experienced adverse job consequences due to her perceived non-feminine appearance or mannerisms. Moreover, to the extent Hudson's "[c]omplaint is ambiguous as to whether it alleges discrimination on the basis of gender or sexual orientation, the law directs us to resolve any such ambiguity in [her] favor." *Wimsatt v. Kroger Co.*, No. 3:14-CV-712-CRS, 2015 WL 3622336, at *4 (W.D. Ky. June 9, 2015).

In its reply, Park Community claims that Hudson's claim that she was told she was "too butch" is insufficient, by itself, to state a gender stereotyping claim. [DN 7 at 2, 5.] Additionally, Park Community argues that, even taking that allegation as true, Hudson fails to "allege that she was subject to any adverse employment action due to her supposed gender non-conformity or that she was treated differently than a similarly-situated female employee who did conform to stereotypical gender norms," as is required to make out a prima facie case of sex discrimination. [DN 7 at 6–7.] However, the Supreme Court has made clear that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Therefore, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in her complaint. *Id.* at 515. Rather, the plaintiff simply must plead enough facts to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 513 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Here, Hudson has pled facts related to her perceived non-feminine appearance and has alleged that she experienced discrimination, harassment, and disparate treatment by Park Community. "While there is no doubt that [Hudson]'s complaint is not the most artfully drafted

9

pleading, [the Court] nonetheless find[s] that her complaint is sufficient on its face under *Iqbal* and *Twombly*—especially when viewed in a light most favorable to" her. *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 498 (6th Cir. 2016). Hudson's "complaint contains 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that [Park Community] discriminated against [Hudson] because of her sex." *Id.* (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). Whether Hudson can produce evidence of the gender stereotyping she alleges, and whether she can carry her burden of demonstrating a prima facie case, are determinations properly reserved for the summary judgment stage of the litigation. *See Swierkiewicz*, 534 U.S. at 512 (citing *Conley*, 355 U.S. at 47–48 ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). Frankly, at this stage of the proceedings, whether Hudson's claims are based on gender stereotyping or sexual orientation is a very fine line with the possibility of overlap. At this time, however, the Court finds that Hudson has alleged sufficient facts to state a cognizable claim for gender stereotyping sex discrimination under the KCRA and Title VII.

**4) More Definite Statement**

Park Community alternatively requests that, in the event the Court does not dismiss Hudson's gender stereotyping claim, that it require her "to provide a more definite statement of the factual allegations to support such a theory." [DN 7 at 9.] Federal Rule of Civil Procedure 12(e) provides that

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). However, "[a] motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail." *United States v. Paul*, No. CIV. A. 6:07-CV-36, 2008 WL 2074024, at *2 (E.D. Ky. May 13, 2008) (quoting *Schwable v. Coates,* 2005 WL 2002360, at *1 (N.D. Ohio August 18, 2005)). Therefore, "[it] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Id.* (quoting *Schwable*, 2005 WL 2002360, at *1). Here, though Hudson's allegations may be scant, they are not unintelligible such that Park Community cannot possibly formulate a response. The Court is confident that Park Community can obtain additional information it seeks through discovery. Accordingly, Park Community's 12(e) motion is denied.

CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss, or, in the alternative, for a more definite statement, [DN 5], is **GRANTED IN PART AND DENIED IN PART**. The motion to dismiss is **GRANTED** with regard Hudson's claim under Louisville-Metro Government Ordinance § 92.06. It is also **GRANTED** with regard to all claims of sexual orientation discrimination under the KCRA and Title VII. It is **DENIED** with respect to Hudson's allegations of sex discrimination on the basis of gender stereotyping under the KCRA and Title VII, however. Only those claims may proceed. Defendant's alternative motion for a more definite statement, [DN 5], is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:     Counsel